Filed 9/16/24  Estate of Beach CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| Estate of DONALD M. BEACH, Deceased. | B319019 |
| MARIE BEACH et al.,<br><br>    Petitioners and Appellants,<br><br>    v.<br><br>BRUCE BEACH et al.,<br><br>    Defendants and Appellants;<br><br>MICHAEL K. LANNING,<br><br>    Real Party in Interest and Respondent. | (Los Angeles County Super. Ct. No. BP143125) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan J. Matcham, Clifford Klein and C. Edward Simpson, Judges (Ret.).  Mark S. Priver, Commissioner and Ruben Garcia, Judge.  Reversed with directions.

Sullivan Law Corporation and Shaunna Sullivan for Petitioners and Appellants.

Lurie, Zepeda, Schmalz, Hogan & Martin and Steven L. Hogan; Law Offices of David C. Hinshaw and David C. Hinshaw for Defendants and Appellants.

Davis Law Office and D. Jason Davis for Real Party in Interest and Respondent.

———————————

Petitioner and appellant Elizabeth Havert (also known as Elizabeth Ann Beach),[1] and interested parties Ann Marie Beach Tabb and Marie Beach, as cotrustees of Robert Beach's testamentary trust (the cotrustees), appeal from a judgment dismissing Havert's petition under Probate Code section 11700 for a determination of the proper distribution of the estate of her father Donald Beach.[2]

Havert and the cotrustees contend:  (1) Havert's claims for elder abuse, fraud, and damages were not barred by the relevant statutes of limitation; (2) the probate court abused its discretion by denying Havert's requests for a second continuance of summary judgment proceedings and further discovery; (3) the probate court erred in granting summary judgment because finding that Donald signed a trust instrument on November 15, 2010, did not resolve all of the issues presented by the petition;

———————

[1] Because more than one party shares the last name Beach, they will be referred to individually by their first names for ease of reference.

[2] All further statutory references are to the Probate Code unless otherwise stated.

(4) the standard for mental capacity set forth in sections 810 to 812 is applicable to determine Donald's capacity to execute the trust instrument on November 15, 2010, rather than the lower standard provided in section 6100.5 to execute a will; (5) the probate court was required to issue an order determining the persons entitled to distribution of Donald's estate and their respective shares; and (6) respondents Bruce Breach (individually, as executor of Donald's estate, and as trustee of Donald's trust) and Beverly MacDonald (collectively respondents) do not have standing to respond or file a cross-appeal challenging the judgment because they did not file an answer to the operative petition, a statement of interest in the estate, or a petition for the personal representative to participate in the proceedings.

We conclude the probate court properly found Havert's claims for elder abuse, fraud, and notice violations are barred by the relevant statutes of limitations. Havert also failed to show the probate court abused its discretion by denying her second request for a continuance and requests for further discovery; the discovery being sought was not necessary to oppose the motion for summary judgment or relevant to Havert's claim to an intestate share.

With respect to the motion for summary judgment, no triable issue of fact was shown as to the existence or authenticity of the trust instrument dated November 15, 2010. The applicable standard to assess Donald's mental capacity to execute the trust document on November 15, 2010, was the standard for testamentary capacity set forth in section 6100.5, because the trust instrument at issue was not complex. Donald's capacity under section 6100.5 to execute testamentary instruments on November 15, 2010, free of undue influence, was established

3

through the admission of his will to probate.  As a result, there was no triable issue of fact concerning the validity of the trust instrument that Donald executed on November 15, 2010.  The probate court properly granted summary judgment, but we reverse the order dismissing Havert's petition with directions to enter a new order setting forth the persons entitled to distribution of Donald's estate and their respective shares.  As a result, we need not address the respondents' cross-appeal challenging the form of the judgment.

## FACTS AND PROCEDURAL BACKGROUND[3]

### I.  Estate Plan

Donald had four siblings:  Beverly, Bruce, Robert, and Douglas Beach. Donald had only one child, Havert.

In May 2010, Donald executed a holographic will distributing property to Beverly, Bruce, Robert, their children, and Donald's caregiver (the holographic will).  Havert was not to receive property under the holographic will.

The caregiver was terminated.  On November 15, 2010, Donald executed a typewritten will prepared by attorney Michael Lanning (the November 2010 will) that revoked all former wills.

---

[3] On the court's own motion, pursuant to Evidence Code sections 459, subdivision (a), and section 452, subdivision (d), we take judicial notice of the appellate court records in *Humiston v. Beach* (Sept. 18, 2015, B260366 [nonpub. opn.] (*Humiston*)), *Havert v. Beach* (Dec. 27, 2018, B285862 [nonpub. opn.] (*Havert I*)), and *Havert v. Beach* (Dec. 27, 2018, B288379 [nonpub. opn.] (*Havert II*)),

The November 2010 will expressly disinherited Havert, instructing that she should receive no distribution from the will or otherwise from Donald's estate.

The November 2010 will gave Donald's personal property to Bruce and Beverly. The will gave the remainder of the estate to the trustee of the "Donald M. Beach Declaration of Trust Dated November 15, 2010". The will stated Donald intended to identify the trust in existence, not create a separate trust through the will. If the gift to the trust was not operative, not valid, or could not become effective for any reason, or if the trust referred to in the will failed or had been revoked, then Donald gave the remainder of his estate to the trustee named in that trust under the same conditions stated in the trust provisions and "said Trust provisions are hereby referred to and incorporated herein for the purpose of creating a testamentary trust on the terms set forth herein." Donald appointed Bruce as executor of the will.

Donald executed a complete restatement of his trust ten months later, on September 7, 2011, prepared by attorney Lanning. Bruce was listed as the successor trustee. At Donald's death, the trust for Donald would terminate and his assets would be distributed as follows. Douglas and Robert would receive $1 million each, subject to taxes, if they were living at the time of Donald's death. To Beverly, the restatement provided certain real property, subject to an agreement allowing Bruce to purchase the property, which the trustee was directed to carry out.

To Bruce, the restatement provided stock and interest in a specific corporation, plus a portion of the balance of the trust assets, to be held in trust. The printed document gave 60 percent of the balance of the trust assets to Bruce, but the number was

5

crossed out by hand and 50 percent written in with the initials "DB." To Beverly, the restatement provided the remaining percentage of the trust assets, to be held in trust. Her percentage was originally printed as 40 percent, but the number was crossed out and 50 percent written in with the initials "DB." Should Bruce or Beverly not be living, his or her trust share would pass to his or her issue by right of representation. If Bruce or Beverly died leaving no issue, his or her share would pass to the trust share for the other surviving beneficiary between them.

Except as otherwise provided, upon the death of any beneficiary for whom a trust was being administered under the restatement, the trust share held for the benefit of that beneficiary would pass as if the beneficiary had not been surviving at the termination of the restatement and distributed or held in trust subject to the provisions of the restatement. After age 29, however, a beneficiary was entitled to withdraw the entire balance of his or her trust share. The restatement expressly stated, "It is Trustor's intent that [Havert] receive no distribution from this Trust or otherwise from Trustor's estate."

Donald died eight months after executing the restatement, in May 2012. Havert learned of his death within a few days. In June 2012, Bruce, as successor trustee, filed a petition to probate the November 2010 will, which he attached to the petition.

In August 2012, Bruce sought to transfer all of the estate assets held outside of the restated trust to the restated trust, dismiss the petition for probate, and discharge petitioner as special administrator. He attached a full copy of the restated trust. He also attached "Exhibit A to the Donald M. Beach Declaration of Trust Dated November 15, 2010" listing several

6

assets and a signature dated November 15, 2010. The probate court granted the petition.

Donald's brother Robert died six months after him in November 2012. Robert's wife Marie was appointed as the personal representative of Robert's estate and became trustee of a testamentary trust created under Robert's will (Robert's trust). Following Marie's death, the remainder of Robert's trust would be distributed to his children, including Tabb and her sister Elizabeth Humiston.

## II. Litigation and Will Contest

In May 2013, Tabb filed a complaint against Bruce, Beverly, and Beverly's son alleging causes of action for elder financial abuse, fraud and deceit, constructive fraud, and negligence (Tabb's elder abuse action). The result of the litigation is not part of the record in this matter.

In July 2013, attorney Shaunna Sullivan, on behalf of Tabb, filed a petition to admit Donald's holographic will to probate (the will contest). Bruce re-filed his petition to probate Donald's November 2010 will. Tabb objected to Bruce's petition on the ground that the November 2010 will was the product of undue influence and Donald lacked capacity to execute it. Tabb's sister Humiston intervened and joined in Tabb's objections.

Tabb subpoenaed several of Donald's estate planning documents from attorney Lanning, including the November 2010 trust document, but Bruce moved to quash the subpoena. Bruce argued that the documents were not directly relevant to the probate petition, because the petition challenged Donald's capacity to make a will, not the validity of his trust. The probate

7

court ordered production of documents related to Donald's wills and the claims of undue influence or lack of capacity, but expressly excluded all documents related to the November 2010 trust and Donald's assets.

After a trial, the probate court found Lanning's testimony credible that Donald's mental state was as clear as ever on November 15, 2010, Bruce sat in a waiting room while Lanning met with Donald, Lanning did not discuss Donald's estate plan with either Bruce or Beverly, Donald knew exactly how he wanted to dispose of his assets, and the documents were prepared and executed that day.

The probate court found Donald had testamentary capacity to execute the November 2010 will, and there was no undue influence in the preparation of the November 2010 will. The disposition of Donald's property in his estate plan was consistent with Donald's stated intentions during his lifetime, and Tabb and Humiston failed to establish the result of the will was inequitable. In September 2014, the probate court entered its order admitting the November 2010 will to probate and denying Tabb's petition.

Tabb and Humiston filed an appeal from the judgment. (*Humiston*, *supra*, B260366.) This appellate court concluded it was unnecessary to decide whether the trial court should have ordered discovery of the November 15, 2010 trust document because any error in refusing to compel production was harmless. (*Id.* at pp. 26-27.)

## III. Executor's Report and Petition for Discharge

In May 2016, Bruce, as executor, filed a report, waiver of account and acknowledgment of satisfaction of interest, and petition for discharge of the executor. He stated that the beneficiaries of the personal property had received their distributions; they filed written waivers of accounting and acknowledgments that their interests had been satisfied. All remaining estate assets were transferred to the restated trust in accordance with the terms of the November 2010 will. Bruce requested to be discharged as executor, having distributed all of the assets of the estate in accordance with the terms of the November 2010 will. Notice would be provided to interested persons, including Robert's estate and Havert at her correct Tennessee address.

## IV. Havert's Petition

On November 9, 2016, Havert filed a petition, which she subsequently amended, for determination of an entitlement to estate distribution under sections 11700 and 17200. The amended petition sought to: (1) determine the existence of a trust declaration dated November 15, 2010, under section 17200; (2) compel the trustee to provide a copy of the terms of the November 2010 trust and an accounting of the probate assets that Donald failed to transfer to the trust before his death; and (3) determine the distribution of the estate under section 11700, if there was no valid trust in existence on November 15, 2010. The amended petition alleged no trust document existed on November 15, 2010, when Donald executed his will. As a result,

the gift of the residuary estate to the trust failed and passed through intestate succession to Donald's heirs, including her. Havert also filed a statement of interest under section 11702.

That same day, Tabb filed a statement of interest under section 11702 as the child of a named beneficiary of the restated trust.

In March 2017, Bruce filed a motion for judgment on the pleadings arguing that Havert had no standing, because she had no interest in the estate. Havert opposed the motion on the ground that she was seeking a determination, as part of the timely administration of the probate estate, that the residue passed by intestacy if no valid trust instrument had been executed on or before November 15, 2010. She argued that she had standing as an heir entitled to take property by intestate succession. Attorney Sullivan, on behalf of Havert, filed Havert's declaration stating her address was incorrect on most of the pleadings and notices sent to her, and Havert had been unaware of the details of Tabb's will contest concerning the holographic will.

In June 2017, Judge Mary Thornton House issued a ruling granting the motion for judgment on the pleadings on the ground that the will contest had conclusively determined the November 2010 trust existed. Havert was not entitled to a distribution, and therefore not an interested person. In addition, the will provisions expressly disinheriting Havert further defeated her claim as an interested person. The court directed Bruce to prepare an order and a judgment.

In July 2017, Judge House granted, confirmed, and approved Bruce's report, waiver of accounting, and petition for discharge. The court also confirmed and approved all Bruce's

10

acts as executor, discharged Bruce as executor, and released him from any liability incurred by acts subsequent to the order.  The court ordered Bruce's counsel to prepare a written order and give notice of the court's ruling.

In August 2017, Judge House entered a written order granting Bruce's motion for judgment on the pleadings.  That same day, the court entered a judgment without leave to amend, denying Havert's petition for a determination of an entitlement to estate distribution with prejudice.  In October 2017, Havert and Tabb filed a notice of appeal from the August 2017 judgment. (*Havert I*, *supra*, B285862.)

In December 2017, Judge House entered a written order prepared by Havert and Tabb based on the July 2017 ruling approving the executor's report and discharging Bruce as executor.  The court terminated the probate of Donald's estate, finding it was administered as a small estate.  In February 2018, Havert and Tabb filed a notice of appeal from the December 2017 order approving Bruce's acts as executor and discharging him as the executor.  (*Havert II*, *supra*, B288379.)

In April 2018, Havert and Tabb submitted their opening brief in *Havert I*.  Havert asserted she had standing as follows. When a will provides for a distribution to a trust, the trust must be in existence or the distribution is void.  No determination had been made that a trust existed at the time Donald executed his will.  If the gift to Donald's trust could not be completed because of a defect, Donald's will provided for the creation of a testamentary trust on the same terms as the existing trust.  But if there was no trust in existence when the will was executed, there were no terms to incorporate in a testamentary trust, and the residuary gift would fail entirely.  Under these specific

11

circumstances, which relied on the nonexistence of a trust at the time that the will was executed, distribution of the residuary gift would be determined under the laws of intestacy, potentially resulting in a distribution to Havert.

Havert and Tabb also argued that Tabb had standing, discovery should have been permitted, and termination of the probate as a small estate was improper. They requested this appellate court find they had standing, reverse the judgment on the pleadings, find they have the right to compel production of the November 2010 trust, and reverse the discovery orders, sanctions, probate termination, and executor's discharge.

In Bruce's respondent's brief in *Havert I*, he argued that the appeal related solely to the judgment on the pleadings, because Havert and Tabb's motion to consolidate their appeals had been denied. Bruce asserted this appellate court had already determined the existence of the 2010 Trust as part of the will contest proceedings in *Humiston*.

In December 2018, this appellate court issued its opinion in *Havert I*. We concluded that Tabb was not an interested person with respect to the probate proceedings and did not have standing to pursue discovery. With respect to Havert, we reversed the judgment and the order granting the motion for judgment on the pleadings on the ground that the existence of a November 2010 trust had not been at issue in the will contest proceeding, and therefore, was not law of the case. (*Havert I, supra*, B285862, at p. 29.) At the same time, in *Havert II*, this court dismissed the appeal from the order discharging the executor on several grounds, including that the issues were moot based on the resolution of the issues and reversal of the judgment in *Havert I*. (*Havert II, supra*, B288379 at pp. 2–3.)

12

## V. Amended Petitions and Discovery Requests After Remand

In March 2019, attorney Sullivan, on behalf of Havert, filed a second amended petition, in which she added new claims and allegations related to Donald's medical condition and undue influence.

Havert filed a motion to compel further responses to her demand for production and inspection of documents. In October 2019, the probate court, on its own motion, bifurcated the issues for trial to first address whether the trust document identified in the November 2010 will was in existence when the will was signed. As a result of ordering the issues for trial, the court concluded it was unnecessary to compel discovery of trust financial documents; such discovery could be pursued later in the proceedings if necessary.

Ultimately, on November 20, 2019, attorney Sullivan filed the operative fourth amended petition on behalf of Havert against the respondents. The petition sought a determination under section 11700 of the persons entitled to distribution of the estate and the extent of the estate. Specifically, the petition sought a determination under section 11700 that: (1) Havert was entitled to a distribution of the residue of the estate; (2) the purported November 2010 trust declaration did not exist when the November 2010 will was executed; (3) if the November 2010 trust existed, it was invalid due to Donald's lack of capacity to execute trust documents under sections 810 to 812 and undue influence by respondents; and (4) any amendment was invalid, due to lack of capacity and undue influence. In addition, Havert

sought:  (1) an order compelling the trustee to provide a copy of the terms of the November 2010 trust and information about Donald's assets; (2) damages for failing to provide required notices; and (3) damages for elder financial abuse, fraud and deceit, constructive fraud, and conspiracy to defraud.

The petition contained extensive allegations about undue influence and Donald's deteriorating medical condition.  The petition noted that following a discovery order, Bruce provided a copy of the November 2010 trust that "appears to lack authentic signatures or an authentic date," but the original document had not yet been made available for review.  The document distributed the trust corpus as follows:  12.5 percent to Douglas, 12.5 percent to Robert, 35 percent to Beverly, and 40 percent to Bruce.  The petition alleged that the signature in the notary book did not appear to be Donald's, the signatures on the trust document provided by Bruce did not match each other, and the signatures on the trust document did not match the notary book signature for " 'Don Beach.' "  In addition, Donald did not usually sign his name as "Don Beach."  Considering the number of years that discovery was sought, the document "may have been redacted at a later date and may be forged and/or created on a later date."  In addition, the petition alleged the signature on the restated trust was unlike Donald's.

The petition alleged the November 2010 trust document was not in existence on November 15, 2010, when Donald executed his will, or when he died.  The document is also unauthenticated.  Havert acknowledged, and expressly was not challenging, the prior ruling that Donald had capacity on November 15, 2010, to execute a will or the provision distributing the residue of the estate.  Instead, Havert alleged that if the

14

November 2010 trust existed, it was invalid because Donald was unduly influenced by respondents and lacked capacity to execute trust instruments under the higher standard for capacity set forth in sections 810 through 812. The will provisions could not be used to make an invalid trust enforceable, and therefore, the residue of the estate passed through intestacy. The petition also stated Havert's address was 3300 Shacklett Road in Murfreesboro, Tennessee.

## VI. Demurrer to Fourth Amended Complaint

Respondents filed a demurrer to the causes of action for damages in the fourth amended petition on the ground that the statute of limitations had run. The statute of limitations for breach of trust was four years, the statute of limitations for elder about was four years, and the statute of limitations for the fraud causes of action was three years.

In support of the demurrer, the respondents requested judicial notice of several documents showing Havert was on notice of the allegations in the fourth amended petition to start the statute of limitations running. First, on June 22, 2012, Bruce served Havert at the correct Tennessee address with notice of his June 2012 petition to administer Donald's estate, including the petition for probate and a copy of Donald's November 2010 will.

Second, on August 26, 2013, Tabb served Havert at the correct Tennessee address with her objections to Bruce's petition to probate the November 2010 will, alleging that Donald lacked capacity on November 15, 2010, and that Bruce and Beverly were barred from serving as executor due to their unclean hands, fraud, and/or elder abuse.

15

Third, on August 26, 2013, Tabb served Havert at the correct Tennessee address with a copy of Tabb's request for judicial notice in support of her petition to probate the holographic will, including a copy of Tabb's May 2013 complaint for damages, imposition of a constructive trust, elder financial abuse, fraud and deceit, constructive fraud, and negligence. Tabb also served her request for judicial notice on Marie, in her capacity as trustee of Robert's trust.

Havert opposed the demurrer.

Marie, representing herself in her capacity as trustee of Robert's trust, filed a statement of interest under section 11702 supporting and joining in Havert's petition. In 2015, Robert's estate had received $489,621 from the restated trust after payment of taxes, but Marie alleged the November 2010 trust was not valid because it was forged or obtained through undue influence. She relied in part on the terms of the holographic will for her claim. She supported Havert's claim to take the residue of the estate through intestacy, and if Havert were not entitled to an intestate share, then Robert's trust was a successor to an intestate share.

In June 2020, Tabb filed an "amended statement of interest," because she was representing herself in a new capacity as co-trustee of Robert's trust. She supported Havert's allegations that the November 2010 trust documents were forged or procured by fraud, incompetence, and undue influence, as alleged in the fourth amended petition. She made similar allegations about purported amendments to trust documents. She filed a copy of her appointment in June 2020 as cotrustee of Robert's trust.

On July 21, 2020, Commissioner Mark Priver was available to hear the demurrer to Havert's petition, but at least one of the attorneys present refused to stipulate to Commissioner Priver hearing the matters. Counsel stipulated, however, that Commissioner Priver could set a continuance.

A hearing was held on the demurrer on February 25, 2021, before Judge Clifford Klein. The court noted that Havert had notice of the facts alleged in her petition as a result of Tabb's August 26, 2013 request for judicial notice, which was served on Havert at the correct address and had Tabb's complaint containing the same allegations attached. Attorney Sullivan argued that even if Havert knew she could file a petition claiming an intestate distribution, it was not logical to file one until the probate court had determined which will was the operative document. The probate court took the matter under submission.

On March 2, 2021, Judge Klein issued a minute order sustaining the respondents' demurrer to the causes of action for damages pursuant to sections 16061.5 through 16061.9, financial elder abuse, fraud, and constructive trust without leave to amend. The court concluded that Havert failed to plead facts sufficient to invoke the delayed discovery rule. Although she disputed that various notices, pleadings, and other documents were properly served on her, the fourth amended petition did not address all of the documents that were purportedly served at her correct address. The court could properly take judicial notice of at least some of the documents, and taken together with facts known to Havert, they would have put a reasonable person on notice to conduct further inquiry into the matter several years ago. Havert did not allege that she made any effort to investigate or litigate until she was contacted by Tabb in 2016. Even under

17

the liberal standard on demurrer, Havert had failed to plead facts sufficient to show the delayed discovery rule applied. In addition, Havert's claims did not "relate back" to the initial petition, which did not assert facts relevant to elder abuse or fraud.

## VII. Motion for Summary Judgment

In June 2021, the respondents filed a motion for summary judgment. They framed the motion based on their view that the sole issue to be decided after this court's remand was whether the November 2010 trust existed when the November 2010 will was executed. The respondents argued the uncontroverted evidence showed the trust existed at that time, was genuine, and was authenticated by Lanning.

The respondents filed the declaration of their attorney David Hinshaw in support of the motion for summary judgment. Although the probate court initially ruled the November 2010 trust document was private and need not be produced, when the probate court ordered Bruce to respond to discovery requests in August 2019, Bruce produced his copy of the November 2010 trust and identified Lanning as the person with the original document.

Bruce attached a copy of the November 2010 trust document. The trust stated, "It is the Trustor's intent that [Havert] receive no distribution from this Trust or otherwise from Trustor's estate." Under the terms of the document, at Donald's death, the November 2010 trust would terminate, and as soon as the trustee deemed appropriate after tax and other considerations, the trustee would divide the trust corpus into four shares as follows: 12.5 percent to Douglas, 12.5 percent to

18

Robert, 35 percent to Beverley, and 40 percent to Bruce.  The shares would be held in trust and administered according to the provisions stated in the document.

If a beneficiary died while his or her share was still held in trust, that beneficiary's share would pass as if the beneficiary had not survived at the termination of the trust, unless the trustee had granted the beneficiary a power of appointment in writing to be exercised by will.  The 2010 trust did not provide for a beneficiary's share to pass to his or her issue by right of representation.  At age 30, however, a beneficiary could withdraw the entire balance of his or her share at any time.  Bruce was named as the successor trustee.

The respondents submitted portions of Lanning's deposition testimony as well.  Lanning testified that he prepared the November 2010 trust document, the November 2010 will, and other related estate planning documents on November 15, 2010.  No other person was involved in the conversations between Lanning and Donald about his estate plan.  Donald executed the documents that same day, Lanning notarized the documents, and Donald left the originals with Lanning.  The November 2010 trust was executed first, in Lanning's presence, followed by the November 2010 will.  Lanning believed he had continuous possession of the November 2010 trust document since it was executed.  Lanning produced the original November 2010 trust document to Havert in 2019 in response to a business record subpoena.  Lanning agreed to allow inspection of the original November 2010 trust document at his office on January 21, 2020, along with inspection of Donald's signature and thumbprint in the notary book.

The respondents propounded a request for admission that the November 2010 trust document was genuine, but Havert denied the request and objected that it called for expert opinion.

Attorney Hinshaw declared that when Lanning cancelled his deposition scheduled for January 21, 2020, attorney Sullivan suggested Havert's handwriting expert could still inspect the original November 2010 trust document at Lanning's office on January 21, 2020. Attorney Sullivan cancelled the inspection, however, when attorney Hinshaw refused to permit inspection of documents signed after November 2010, and she had taken no further steps to reschedule inspection of the original November 2010 trust document.

The respondents requested the probate court take judicial notice of several documents, including a declaration from Havert's forensic document expert Linda Mitchell. Mitchell declared that attorney Sullivan provided two copies of the November 2010 trust document, as well as several comparison documents, to determine the authorship of Donald's signatures and review his thumbprint. The quality of the images was fair to poor, and she was requesting access to inspect the original documents in the possession of attorney Lanning, Bruce, or the probate court archives, in order not to mislead the trier of fact.

## VIII. Request for Continuance

In August 2021, Havert filed a request for an order denying summary judgment or continuing the hearing on the grounds that further discovery was necessary. Havert submitted attorney Sullivan's declaration stating that Lanning was scheduled to produce documents on September 1, 2021, when Havert's

20

document examiners would be able to inspect them. She complained that attorney Hinshaw refused to produce documents executed after November 15, 2010, and had instructed Lanning to limit his production of documents similarly.

On September 1, 2021, Lanning allowed Havert's experts to review the original November 2010 trust document, as well as several other documents that were signed the same day or close in time. The experts reviewed the documents for approximately two hours.

On September 9, 2021, Havert filed a document created by the respondents' attorney and altered by hand. The document was entitled "Respondents' Separate Statement of Material Undisputed Facts in Support [Of] Their Motion for Summary Judgment." The word "respondents" was crossed out, "petitioner's" was handwritten, and "un" was crossed out from undisputed facts. Although the document stated it was submitted by the respondents, the column for the opposing party's response contained Havert's typewritten responses. Havert stated expert opinion was necessary to determine whether Donald's signature on the November 2010 trust instrument was genuine. In addition, attorney Sullivan provided her declaration supporting Havert's request to deny the motion for summary judgment or continue the hearing until discovery was complete.

Havert's request for a continuance was heard on September 9, 2021, before Judge C. Edward Simpson. Attorney Sullivan explained that certain documents had recently been examined. Judge Simpson granted the motion for a continuance of the hearing on the motion for summary judgment to allow Havert's expert witnesses to formulate their opinions on the

signature to the November 2010 trust based on the information currently available to them. The probate court informally encouraged respondents to provide redacted copies of Donald's 2011 documents for the purpose of comparing the signatures.

On September 14, 2021, Havert filed a motion to compel production of original documents for inspection. In addition, Havert sent a deposition subpoena to attorney Lanning ordering him to appear on October 13, 2021, and produce 44 separate categories of documents, including documents that had been produced previously.

Lanning, who was 89 years old, filed a motion to quash Havert's deposition subpoena, or alternatively to impose a protective order, on the grounds that he had been previously deposed and Havert had not sought leave of court to take a second deposition. Two years earlier, on October 2, 2019, Havert sent a deposition subpoena requiring Lanning to appear and produce 62 separate categories of documents, such as all documents reflecting a buy/sell agreement between Donald and Bruce referenced in any trust of Donald's and all documents related to a power of attorney drafted for Donald. Lanning complied with the October 2, 2019 deposition subpoena and produced all of his records responsive to the subpoena. Forcing a nonparty witness to repeatedly produce the same documents and make the originals available for inspection was unreasonably burdensome and harassing, and to the extent Lanning was required to testify, he requested a protective order limiting questioning to matters that he had not been previously questioned about in deposition or at trial.

## IX.  Second Request for Continuance

Havert filed a second request for an order denying summary judgment or continuing the hearing on the motion for summary judgment.  Havert argued there was a pending motion to produce original trust documents that the respondents claimed to constitute the operative trust, Lanning's motion for a protective order needed to be heard, and expert Mitchell needed to see existing documents that Donald purportedly signed through 2012 to form her opinion.

Havert provided attorney Sullivan's declaration in support of the request for denial or continuance of the motion for summary judgment.  Sullivan stated that it was Lanning who cancelled the production of documents on January 21, 2020, not her.

Havert also provided Mitchell's declaration.  Mitchell declared that she had examined a copy of the November 2010 trust document and the original.  She also received copies of trust documents executed in 2011 and 2012, but was not permitted to examine the original documents.  Mitchell received signatures reported to be genuine, but few were contemporary to the documents in dispute, particularly for 2011 and 2012.  It is not uncommon for elderly patients to lose pen control and writing skill over time, so it was important to examine other writing samples contemporary to the disputed documents to confirm Donald's writing capabilities toward the end of life.  Mitchell asserted that to provide a forensically reliable opinion, she needed to examine existing documents purportedly signed by Donald in 2010 through 2012.

As part of her request for denial or continuance of the motion for summary judgment, Havert included points and authorities in opposition to the motion for summary judgment. She noted that under section 11704, any statement in her petition or the statements of interest must be considered as evidence in the proceeding. Havert argued that because the respondents had not denied the allegations of the fourth amended petition by filing a response other than a demurrer and motion to strike, the allegations of the petition were undisputed. She asserted that pending discovery of the original trust amendments executed after November 2010 and additional deposition testimony from Lanning was required to oppose the motion for summary judgment.

In addition, Havert argued multiple triable issues of fact existed that were not resolved by the respondents' motion for summary judgment. Specifically, she argued allegations about undue influence and Donald's capacity to execute the 2010 trust and subsequent amendments remained to be determined. She argued that the probate court was not required to interpret the 2010 will to save an invalid trust or any subsequent trust amendments without a determination of their authenticity or validity. She objected to bifurcating the existence of the 2010 trust instrument without addressing her challenges to validity, including mental capacity and undue influence. She filed a separate statement of disputed facts.

## X.  Response to Second Request for Continuance

On October 22, 2021, the respondents filed a response to Havert's requests for denial or continuance of the motion for

summary judgment. They argued that no triable issue of fact had been shown. The respondents' evidence showed Lanning drafted the November 2010 trust based on Donald's directions, witnessed Donald signing the document on November 15, 2010, and notarized Donald's signature. Havert did not provide an expert declaration opining that Donald's signature on the November 2010 trust was forged. The most reliable evidence for the expert to have considered was the original will admitted to probate with Donald's genuine signature on November 15, 2010, but Havert failed to arrange for her expert to examine the original will at the courthouse. Havert was not the beneficiary of any trust and did not have standing to prosecute a trust contest. The petition under section 11700 was a probate proceeding. The fact that the threshold issue concerned existence of a trust document did not convert the action into a trust contest. Havert had not opposed the motion for summary judgment with evidence and offered no factual or legal basis to deny the motion for summary judgment.

Respondents provided the declaration of attorney Hinshaw in support of the reply. He attached an email received from attorney Sullivan in January 2020, stating that because the respondents refused to produce original 2011 trust instruments, Havert would not go forward with the document inspection by her experts on January 21, 2021. He also had agreed to stipulate to Havert's expert inspection of the original will at the courthouse, but Havert never followed up with a stipulation.

## XI. Hearing on Motion for Summary Judgment

The motion for summary judgment was heard on October 29, 2021, before Judge Susan Matcham. The probate

25

court noted that it was undisputed that Lanning produced a copy of the November 2010 trust to Havert in October 2019. The court stated that Havert filed a second request for a continuance, but no opposition to the motion for summary judgment. The court found the respondents met their burden to show a prima facie case that the November 2010 trust existed. Havert had not shown the existence of any disputed issue of material fact. The court concluded Havert's experts had multiple opportunities to examine and compare Donald's signatures, including an opportunity to examine the original signature on the trust document in January 2021, but chose not to do so. Donald's original signature is on the November 2010 will filed with the court, which the expert could have examined but did not. Havert's reason for the inspection request did not seem material, because it was directed at two later trust instruments.

Havert argued that under section 11704, subdivision (a), the court was required to consider any statement made in a petition filed under section 11700 and any statement of interest filed under section 11702 as evidence. The court was obligated to make an order determining the distribution of the estate under section 11705. Havert noted that there was no answer to the fourth amended petition. Havert argued that even assuming there was a November 2010 trust that existed and was signed by Donald, the respondents' position was that the estate should be distributed pursuant to a subsequent amendment.

The probate court did not consider the documents that Havert filed to constitute an appropriate opposition pleading to a motion for summary judgment, and therefore, the court did not consider any opposition to the motion to have been filed. The court denied the motion for a second continuance and granted the

26

motion for summary judgment on the question of whether the November 2010 trust existed. The court ordered the parties to file briefs addressing the remaining issues, if any.

Havert filed a motion for reconsideration of the October 29, 2021 ruling.

## XII. Briefs and Ruling on Remaining Disputed Issues

On November 15, 2021, Havert filed a memorandum of points and authorities identifying the remaining issues as follows. The first issue was whether Donald lacked capacity under sections 810 to 812 to execute the 2010 trust and subsequent trust amendments, rather than under the lesser standard of section 6100.5 for a will. Havert did not assert the 2010 trust was invalid for any other reason. If the 2010 trust was invalid, the second issue was whether the trust was saved by the distribution provisions of the 2010 will. Or, if a testamentary trust was created, what the terms and effect were. The third issue was for the probate court to issue an order under section 11705 determining the persons entitled to distribution of the estate and specifying their shares. The probate court was required to consider the statements in the petition and statements of interest as evidence. In addition to the issues identified, Havert sought reconsideration of the issues raised in opposition to the motion for summary judgment, particularly because the probate court did not have the opposition pleading at the time of the ruling despite Havert's filing.

On the same date, the respondents filed a memorandum arguing that there were no remaining issues to resolve. Following the summary judgment ruling, Havert had no standing

27

to pursue the remaining claims in her petition. The petition was not a trust contest and Havert was not a beneficiary of Donald's trust under any version of the trust. Havert had no standing to prosecute a trust contest or any other party's entitlement to a trust distribution. The probate court did not need to determine any issues concerning validity, undue influence, or capacity to execute the 2010 trust or subsequent amendments.

On December 8, 2021, Judge Matcham denied the motion for reconsideration. The court granted the motion to quash the subpoena for Lanning's deposition on the ground that Havert had not sought permission from the court for a second deposition. The court continued the hearing on the issue of whether any issue remained to be determined to December 27, 2021.

On December 23, 2021, Commissioner Priver entered a written order that simply restated the October 29, 2021 minute order issued by Judge Matcham finding no triable issue of fact as to whether the 2010 trust existed and granting respondents' motion for summary judgment, with reservation of the issue of whether Havert's entire fourth amended petition was resolved by the order.

A hearing was held on December 27, 2021, before Judge Matcham concerning the status of the case following the order granting summary judgment. Havert argued that the trial court must determine what the terms of the trust are, which assets are in the trust, and how it should be distributed. Judge Matcham reviewed the procedural history and the production of the November 2010 trust document, before concluding that there was nothing further to be determined about the fourth amended petition. All claims under the fourth amended petition were conclusively determined by the motion for summary judgment.

On February 18, 2022, attorney Sullivan, on behalf of Havert and the cotrustees, filed a notice of appeal from the judgment entered on "3/5/21 through 2/4/22[ ]."

Havert filed multiple proposed judgments, to which the respondents filed objections. The respondents filed a proposed order, to which Havert filed objections.

On March 29, 2022, Judge Ruben Garcia entered a written order prepared by the respondents stating simply that the order granting summary judgment entered on December 23, 2021 by Commissioner Priver had determined all remaining issues on Havert's fourth amended petition.

That same day, Judge Garcia entered a written order prepared by Havert containing findings and orders as follows: (1) listing causes of action dismissed by the order sustaining the demurrer without leave to amend; (2) denying Havert's request for a second continuance; (3) confirming sanctions awards against Havert and attorney Sullivan resulting from discovery motions; (4) "confirming" Havert's motion for reconsideration of the order granting summary judgment; (5) granting the motion for summary judgment and dismissing the fourth amended petition in its entirety, having failed to show the November 2010 trust did not exist on November 15, 2010, or was not authentic; (6) "Dismissal of Havert's Fourth Amended Petition is without prejudice to any claims of interests persons who did or could file a Probate Code [section] 11702 Statement of Interest or a claim as a prior successor to a named beneficiary of Decedent or as a beneficiary under the recently produced November 15, 2010 trust"; and (7) the parties were ordered to bear their own costs in the interests of justice.

29

On April 15, 2022, respondents filed a timely cross appeal from the judgment entered on March 29, 2022.

## DISCUSSION

## I. Demurrer to Claims for Elder Abuse, Fraud, and Notice Violations

It is undisputed that Havert's claims for elder abuse, fraud, and notice violations, which she asserted for the first time in the second amended petition filed on March 28, 2019, are barred by the relevant statutes of limitation unless saved by another doctrine. Havert and the cotrustees contend the claims relate back to the allegations of the original and first amended petitions filed in 2016. We disagree.

We review the trial court's order sustaining the demurrer de novo and exercise our independent judgment as to whether the petition states a cause of action as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) We accept as true all material facts properly pled and matters which may be judicially noticed, but disregard contentions, deductions, or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid.*)

"The plaintiffs bear the burden of demonstrating that the demurrer was sustained erroneously." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) It is the appellants' responsibility to support their contentions on appeal with meaningful argument and citation to authority. (*Ibid.*) "When

legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.]" (*Ibid.*) "We are not required to examine undeveloped claims or to supply arguments for the litigants. [Citations]" (*Ibid.*)

It is clear from our de novo review of the record that Havert's original and first amended petition do not contain allegations supporting claims for elder abuse, fraud, or damages for notice violations. The original and first amended complaint were based on Havert's allegation that no trust document existed at the time that Donald executed his will.

Havert and the cotrustees additionally contend the statute of limitations on Havert's fraud claim did not begin to run until Bruce produced certain trust documents in 2019. This is incorrect. In August 2013, Tabb served Havert and Marie with pleadings that alleged Donald lacked capacity to execute testamentary instruments in November 2010, and accused Bruce and Beverly of fraud, elder abuse, and unclean hands. Havert and the cotrustees were on notice of their potential claims by August 2013. The demurrer was properly sustained.

## II. Denial of Second Continuance for Discovery

Havert contends the probate court abused its discretion by denying her motions to compel production of certain documents and her second request for a continuance to conduct discovery. We find no abuse of discretion has been shown.

Code of Civil Procedure section 437c, subdivision (h), provides in pertinent part: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or

31

summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just."

The party seeking a continuance must make a good faith showing by affidavit that (1) the facts to be obtained are essential to oppose the motion; (2) there is reason to believe the facts exist; and 3) the reasons why the party cannot currently present the facts. (*Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 152–153 (*Braganza*).)

The trial court has discretion to grant or deny a request for a continuance under Code of Civil Procedure section 437c, subdivision (h), and we review the court's ruling for an abuse of discretion. (*Braganza, supra*, at p. 152.)

Havert has not shown that any of the discovery she was seeking was necessary to oppose the motion for summary judgment. For example, Havert sought production of documents that Donald purportedly executed after November 15, 2010. Havert's forensic document expert Mitchell declared it is important to examine contemporary writing samples because elderly people often lose pen control over time. Donald's genuine signature on the operative will, executed on November 15, 2010, was the best example of Donald's contemporaneous signature for the expert's comparison. Mitchell inspected the original signature on the November 2010 trust. The expert also inspected Donald's handwriting and signature on other contemporaneous documents. The parties had access to Donald's holographic will, executed just six months before the November 2010 trust. Havert failed to show that examination of documents Donald

purportedly signed after November 2010, when his pen control had likely further declined, was necessary for Mitchell to evaluate the signature on the November 2010 trust, rather than merely cumulative and less informative than the exemplars she had. No abuse of discretion has been shown.

Instead of explaining how particular discovery was necessary to oppose the motion for summary judgment, Havert asserts the discovery was necessary for the probate court to determine the proper distribution under the will. As discussed further below, the motion for summary judgment fully resolved the issues presented by the petition without reaching the issues for which Havert sought additional discovery. The probate court properly denied Havert's request for a second continuance and requests for further discovery concerning issues unrelated to the summary judgment motion.

## III. Motion for Summary Judgment

Havert and the cotrustees contend that the motion for summary judgment did not resolve all of the issues in the petition, including issues about the validity of various trust documents and the persons entitled to distribution from the estate. On appeal, they invite this court, in conducting its de novo review of the summary judgment proceedings, to resolve certain issues in their favor and order distribution of the estate to Havert, or alternatively, to find triable issues of fact requiring an evidentiary hearing. We conclude the motion for summary judgment resolved all of the issues in the petition, and therefore,

a final order stating the persons entitled to distribution and their shares must be entered.[4]

## A. Standard of Review

"In reviewing the trial court's grant of summary judgment, we assume the role of the trial court and independently determine the merits of the motion. [Citation.] A defendant moving for summary judgment bears the initial burden of showing either a complete defense to the plaintiff's claims or that the plaintiff cannot establish at least one element of the cause of action. [Citation.] If the defendant makes this showing, the burden shifts to the plaintiff to establish that a triable issue of material fact exists. [Citation.] However, if the defendant fails to meet its burden, the motion is defeated, and the plaintiff has no obligation to demonstrate a triable issue of material fact. [Citation.] In reviewing whether these burdens have been met, we strictly scrutinize the moving party's papers and construe all facts and resolve all doubts in favor of the party opposing the motion. [Citations.]" (*Innovative Business Partnerships, Inc. v. Inland Counties Regional Center, Inc.* (2011) 194 Cal.App.4th 623, 628.)

---

[4] We note that in the lower court and on appeal, the appellants did not challenge the respondents' standing to file a motion for summary judgment.

## B. Statutory Scheme

An order admitting a will to probate conclusively establishes the due execution and validity of the will. (*Estate of Neubauer* (1958) 49 Cal.2d 740, 745.) After letters are issued to the personal representative, and before a final distribution order, the personal representative or any person claiming to be entitled to distribution of a share of the estate may file a petition under section 11700, formerly section 1080, to determine who is entitled to distribution of the estate. (§ 11700.) The petition must set forth the basis for the petitioner's claim. (*Ibid.*)

A petition to determine the distribution of an estate is a separate in rem proceeding to resolve disputes over testate and intestate rights to distribution of an estate. (*Estate of Herzog* (2019) 33 Cal.App.5th 894, 903 [decided under former section 1080] (*Herzog*).) The due execution and validity of a will that has been admitted to probate cannot be collaterally attacked in a proceeding under section 11700. (*In re Neubauer's Estate*, *supra*, 49 Cal.2d at p. 747 [decided under former section 1080].)

Before the hearing on the petition, any interested person can file a written statement of the person's interest in the estate. (§ 11702, subd. (a).) "The written statement may be in support of, or opposition to, the petition. No other pleadings are necessary and the written statement of each claimant shall be deemed denied by each of the other claimants to the extent the written statements conflict." (*Ibid.*) A person who fails to file a timely statement of interest may not participate in the proceeding, but the person's interest in the estate is not otherwise affected. (§ 11702, subd. (b)(2).) All interested persons are bound by the decision, regardless of whether they filed a written statement of

35

interest or otherwise appeared in the proceeding. (§ 11702, subd. (b)(3).)

"The court shall consider as evidence in the proceeding any statement made in a petition filed under Section 11700 and any statement of interest filed under Section 11702." (§ 11704, subd. (a).)

The personal representative may petition the court for authorization to participate in the proceeding, as necessary to assist the court. (§ 11704, subd. (b)(1).) "The court shall determine the manner and capacity in which the personal representative may provide assistance in the proceeding. The court may direct the personal representative to file papers as a party to the proceeding, or to take other specified action, if deemed by the court to be necessary to assist the court." (§ 11704, subd. (b)(2).)

The usual rules of practice and procedure applicable to civil actions apply to proceedings under section 11700 unless the code provides otherwise. (§ 1000.) The probate court has discretion to order the issues for proof in a proceeding for determination of entitlement to distribution. (*Bodine v. Superior Court of Santa Barbara County* (1962) 209 Cal.App.2d 354, 362 [referring to former section 1081].) The court may also grant summary judgment or summary adjudication of issues in the proceeding. (See, e.g., *Estate of Groscup* (1964) 231 Cal.App.2d 535, 536).

Section 11705 provides: "(a) The court shall make an order that determines the persons entitled to distribution of the decedent's estate and specifies their shares. [¶] (b) When the court order becomes final it binds and is conclusive as to the rights of all interested persons."

"A final order of distribution operates in rem to settle the testate and intestate rights to distribution of all those who either did or could have participated as claimants." (*Estate of Kampen* (2011) 201 Cal.App.4th 971, 987.) A person who is found to have no claim to a distribution from the estate is "not interested in the other questions involved in the decree and cannot be heard to urge error in the decree in favor of other claimants or the evidence in support thereof." (*In re Friedman's Estate* (1918) 178 Cal. 27, 34.)

### C. Existence of Trust Instrument on November 15, 2010

We conclude there is no triable issue of fact as to whether Donald signed a trust instrument on November 15, 2010. The respondents submitted the November 2010 trust instrument. They also submitted Lanning's deposition testimony that he prepared the November 2010 trust document, the November 2010 will, and other related estate planning documents on November 5, 2010. Donald executed all the documents that same day, Lanning notarized the documents, and Donald left the originals with Lanning. The November 2010 trust was executed first, in Lanning's presence, following by the November 2010 will. Lanning maintained continuous possession of the original November 2010 trust document since its execution. The respondents' evidence established the trust document was executed by Donald on November 15, 2010, and authenticated by Lanning. The burden shifted to Havert to demonstrate a triable issue of fact existed on these issues.

In opposition to the motion for summary judgment, Havert relied on the statements in her operative fourth amended petition, which are considered evidence in a proceeding under section 11700.[5]  Havert alleged the November 2010 trust document did not exist, but after the respondents submitted the November 2010 trust document, Havert's bare speculation in the petition was not sufficient to create a triable issue of fact.  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.)  " 'It is not enough to produce just some evidence.  The evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment.' [Citation.]" (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 108.)  A triable issue of fact is not raised by broad, conclusory assertions or mere possibilities. (*Sinai Mem'l Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196–197.)  The party opposing summary judgment may rely on inferences, but "those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation,

---

[5] Havert and the cotrustees contend the respondents were deemed to have admitted the allegations of the petition as true because they failed to file an answer to the operative petition. This is incorrect in the context of a petition under section 11700. The allegations of the petition are considered as evidence pursuant to section 11702, but since other people's interests in the estate are not affected by failing to file a timely statement of interest, the allegations of Havert's petition setting forth her claim to a share cannot simply be deemed true. (§ 11702.)

conjecture, imagination, or guesswork. [Citation.]" (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161.)

Beyond speculating that the November 2010 trust document did not exist, Havert did not allege a factual basis to support her conclusion and she did not allege the November 2010 trust document produced by Lanning was not genuine. Her speculation that the document did not exist, standing alone, would not allow a trier of fact to find the underlying fact in her favor.

Havert did not allege in her petition that the signature on the November 2010 trust document maintained by Lanning was not Donald's signature, nor did she dispute Lanning's authentication of that document, because Havert had not yet reviewed the document when she filed the operative petition. The statements in the petition, although considered evidence, did not show any triable issue of fact as to the existence and authenticity of the November 2010 trust document maintained by Lanning.

Havert did not submit any additional evidence. Havert argued that expert testimony was required to prove the signature on the November 2010 trust document was a forgery, but after her expert examined the original document and several contemporaneous exemplars of Donald's signature, Havert did not submit any declaration that the signature on the November 2010 trust document was not Donald's. Havert did not meet her burden to show a triable issue of fact as to whether Donald signed the November 2010 trust document on November 15, 2010, as authenticated by Lanning.

The cotrustees, although entitled to participate in the proceedings under section 11700, did not file any opposition to

39

the motion for summary judgment. The allegations in their statements of interest, which are considered evidence in a proceeding under section 11700, were similarly speculative and conclusory as to whether the signature on the November 2010 trust document was genuine, and failed to raise a triable issue of fact on this issue.

### D. Capacity to Execute the November 2010 Trust Document

In Havert's petition and in opposition to the motion for summary judgment, she did not challenge Donald's capacity to execute the November 2010 will under section 6100.5, but she asserted that Donald's capacity to execute the November 2010 trust should be assessed under the higher standard set forth in sections 810 to 812. On appeal, Havert and the cotrustees contend undisputed evidence shows Donald lacked capacity under the higher standard. In our de novo review, we conclude the applicable standard is set forth in section 6100.5.

Sections 810 through 812 set forth the standard for determining whether a person has the mental capacity for certain legal acts and decisions, including the capacity "to contract, . . . to execute wills, or to execute trusts." (§ 811, subd. (a); *Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1351 (*Lintz*).) A rebuttable presumption exists that "all persons have the capacity to make decisions and to be responsible for their acts or decisions." (§ 810, subd. (a).) To establish a person lacked capacity to take a particular action, the challenger must show (1) the person had one of the mental deficits listed in section 811 and (2) there is a correlation between the mental deficit and the "decision or acts in

40

question." ( § 811, subd. (a).) The deficit must "significantly impair[ ] the person's ability to understand and appreciate the consequences of his or her actions with regard to the type of act or decision in question." (§ 811, subd. (b).)

"Accordingly, sections 810 to 812 do not set out a single standard for contractual capacity, but rather provide that capacity to do a variety of acts, including to contract, make a will, or execute a trust, must be evaluated by a person's ability to appreciate the consequences *of the particular act he or she wishes to take*. More complicated decisions and transactions thus would appear to require greater mental function; less complicated decisions and transactions would appear to require less mental function." (*Andersen v. Hunt* (2011) 196 Cal.App.4th 722, 730 (*Andersen*).)

In comparison, section 6100.5 sets forth the standard for testamentary capacity specifically to make a will: a person is not mentally competent to make a will unless at the time of making the will, the person understands the nature of the testamentary act, the nature and situation of the individual's property, and the person's relationship to others affected by the will, including parents, spouse, and descendants. (§ 6100.5, subd. (a).)

Courts evaluate a person's capacity to make or amend a trust pursuant to the standard of testamentary capacity contained in section 6100.5 when the trust or trust amendment, in its content and complexity, closely resembles a will or codicil. (*Andersen*, *supra*, at p. 731 [contested portion of trust amendment, simply changing percentages of estate provided to each beneficiary, was indistinguishable from will or codicil].) "When determining whether a trustor had capacity to execute a trust amendment that, in its content and complexity, closely

41

resembles a will or codicil, we believe it is appropriate to look to section 6100.5 to determine when a person's mental deficits are sufficient to allow a court to conclude that the person lacks the ability 'to understand and appreciate the consequences of his or her actions with regard to the type of act or decision in question.' (§ 811, subd. (b).)  In other words, while section 6100.5 is not directly applicable to determine competency to make or amend a trust, it is made applicable through section 811 to trusts or trust amendments that are analogous to wills or codicils." (*Andersen, supra*, at p. 731.)

Courts apply a higher standard of mental functioning than the one articulated in section 6100.5 when a trust instrument is unquestionably more complex than a will or codicil.  (*Lintz, supra*, 222 Cal.App.4th at pp. 1352–1353 [trust instrument designated community property, provided interest to surviving spouse for her lifetime, and provided for creation of multiple trusts at death of surviving spouse in contemplation of estate tax consequences].)

We conclude the standard articulated in section 6100.5 applies to the evaluation of Donald's capacity to execute the November 2010 trust instrument.  The relevant trust provisions were relatively simple and analogous to a will.  The property transferred to the trust was to be used for Donald's benefit during his lifetime, the trust terminated at his death, and the property was to be distributed to his four siblings in specific percentages to be kept in trust, but which could be withdrawn at any time.  The November 2010 trust closely resembled a will in its level of complexity, and therefore, it is appropriate to apply the same standard to evaluate Donald's capacity to execute the November 2010 trust.  Because admission of Donald's will to

probate conclusively established Donald was not unduly influenced and had capacity to execute the November 2010 will, a finding that cannot be challenged in the present proceeding, Donald necessarily had capacity under the same standard and the same facts when he executed the November 2010 trust instrument at the same time. No triable issue of fact has been raised concerning Donald's capacity to execute the November 2010 trust document under the lower standard established in section 6100.5.

## E. Persons Entitled to Distribution and Their Shares

Havert contends the probate court was required to make an order determining the persons entitled to distribution of Donald's estate and specifying their shares. We agree. The summary judgment proceedings fully resolved all competing claims to the estate, and therefore, the court must enter an order stating the persons entitled to distribution and their shares.

### 1. Havert's Claim

The summary judgment proceedings fully resolved Havert's claim to a share of the estate through intestacy. First, she claimed she was entitled to share of the estate because the November 2010 trust document did not exist when Donald executed his will, causing the gift to the trust to fail and the assets to pass by intestacy. As stated above, the evidence established Donald signed a trust instrument on November 15, 2010, which was authenticated by Lanning.

Second, Havert claimed Donald's capacity to execute the November 2010 trust should be assessed under the higher standard set forth in sections 810 through 812, rather than the standard for testamentary capacity applied to wills under section 6100.5. Following from this, Havert asserted there were triable issues of fact as to whether Donald lacked capacity and was subject to undue influence under the higher standard. If the probate court found the November 2010 trust invalid under the higher standard, Havert argued that the court could not legally and equitably interpret the November 2010 will to save the invalid trust by creating a testamentary trust on the same terms. Instead, Havert argued the assets in the invalid trust should pass by intestacy to the one person expressly disinherited under Donald's estate plan.

As stated above, however, the correct standard to determine Donald's capacity to execute the November 2010 trust was the lower standard contained in section 6100.5. The finding that Donald met this standard and was not unduly influenced on November 15, 2010, when he signed the documents in his estate plan has been conclusively established for purposes of a petition for distribution under section 11700. Havert did not allege that the November 2010 trust was invalid for any other reason. As a result, there is no triable issue of fact that a valid trust existed when Donald executed his November 2010 will and at his death, regardless of whether it was subsequent successfully amended. The gift of the residue of the estate to the trustee of the November 2010 trust is enforceable and the savings provision of the November 2010 will need not be invoked. Havert's claim to a share of the estate by intestacy fails.

To the extent that Havert contends her petition includes a trust contest under section 17200 challenging amendments to the trust after November 15, 2010, she clearly has no standing. She is not a beneficiary of the November 2010 trust document or any amendment.

## 2. Claim of Robert's Trust

The summary judgment proceedings also resolved the cotrustees' claim to a share of the estate on behalf of Robert's trust. First, the cotrustees rely on Havert's argument that a higher standard for mental capacity applies to Donald's execution of the November 2010 trust. They contend the higher standard was not met, and therefore, the trust assets pass through intestacy or a testamentary trust based on the original trust terms. We have already concluded the lower standard under section 6100.5 applies in this case, which Donald met, and therefore, the cotrustees' claim under this theory fails for the same reason as Havert's claim.

Second, the cotrustees contend that to determine the proper distribution of the estate, the probate court must determine whether the trust is governed by its original terms or the terms of a subsequent amendment. Specifically, they assert Donald lacked capacity to execute amendments to the trust after November 15, 2010, and therefore, the original trust terms govern. In this case, however, it is not necessary to determine the operative terms of the trust or the validity of any amendment to determine the proper distribution of the estate under the will. The November 2010 will gives the residue of Donald's estate to the trustee of the November 2010 trust. The residue of the estate

45

is distributed to the trustee of the trust regardless of the terms of the trust, whether the original terms apply or were subsequently amended. (Cf. *Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1123 [probate court had to determine validity of trust in proceeding under sections 11700 and 17200, because if trust was invalid, decedent's will gave residue of estate to individual].)

Moreover, even were we to conclude that the probate court should have determined Donald's capacity to execute amendments to the trust, any error was harmless as to Robert's trust. (Cf. *Herzog*, *supra*, 33 Cal.App.5th at pp. 903 and 911 [appellants must show prejudice from error].) Common sense dictates that Robert's trust would not have been entitled to a distribution under the original terms of the trust. Under the original terms, the trustee had discretion to wait to divide the trust corpus into shares for the beneficiaries until after taxes were paid, creditors satisfied, assets liquidated or divided, and other considerations settled. Robert died less than six months after his brother. Although Robert was entitled to withdraw his share at any time, as a practical matter, the trust corpus would not have been divided into shares and distributed prior to Robert's death. Under the original terms, if a beneficiary died while his or her share was still held in trust, that beneficiary's share passed to the other named beneficiaries in the trust document, rather than the beneficiary's estate or issue. Robert's share would have passed to his surviving siblings as if he had pre-deceased Donald. The trustee of Robert's trust would not have been entitled to any distribution under the original terms of the trust. No prejudicial error has been shown.

### 3. Distribution Order

Havert contends the probate court was required to issue an order determining the people entitled to distribution and specifying their shares under section 11705, subdivision (a). We agree. Because the motion for summary judgment fully resolved the competing claims to distribution from the estate, summary judgment must be granted and an order issued stating the persons entitled to distribution and their shares. Specifically, under the November 2010 will, Bruce, individually, and Beverly are entitled to distribution of Donald's tangible personal property in equal shares, and Bruce, as trustee, is entitled to distribution of the residue of the estate.

Because we conclude the December 23, 2021 order granting summary judgment, the March 29, 2022 order stating the December 23, 2021 order determined all remaining issues, and the March 29, 2022 judgment dismissing Havert's petition must be reversed and new rulings entered consistent with this opinion as stated in the disposition below, we need not address the appellants' additional contention that Commissioner Priver had no authority to enter the December 23, 2021 order in the absence of a stipulation by the parties. We also need not address the respondents' cross-appeal challenging the form of the judgment, or the appellants' contention that the respondents have no standing to respond or to file their own appeal from the judgment, because they did not file an answer to the operative petition, a statement of interest in the estate, or a petition for the personal representative to participate in the proceedings.

## DISPOSITION

The December 23, 2021 order granting summary judgment, the March 29, 2022 order concerning the effect of the December 23, 2021 order, and the March 29, 2022 judgment dismissing Havert's petition are reversed.  The probate court is directed to enter (1) a new and different order granting the motion for summary judgment in its entirety, and (2) a new and different judgment stating that Bruce Beach, individually, and Beverly Beach are entitled to distribution of Donald Beach's tangible personal property in equal shares, and Bruce Beach, as trustee of the Donald M. Beach Declaration of Trust Dated November 15, 2010, is entitled to distribution of the residue of Donald Beach's estate.  In the interests of justice, the parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.

MOOR, Acting P. J.

We concur:

KIM, J.

DAVIS, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.